FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 15, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JEFFREY G., [1]

                    Plaintiff,

        v.

KILOLO KIJAKAZI,
COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

NO:  1:21-CV-03131-LRS

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

    BEFORE THE COURT are the parties' cross-motions for summary judgment.

ECF Nos. 10, 11.  This matter was submitted for consideration without oral

argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is

_____

[1] The court identifies a plaintiff in a social security case only by the first name and

last initial in order to protect privacy.  See Local Civil Rule 5.2(c).

ORDER - 1

represented by Special Assistant United States Attorney Jeffrey E. Staples.  The

Court, having reviewed the administrative record and the parties' briefing, is fully

informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 10, is

granted and Defendant's Motion, ECF No. 11, is denied.

## JURISDICTION

Plaintiff Jeffrey G. (Plaintiff), filed for supplemental security income (SSI) on

August 14, 2015, and alleged an onset date of August 1, 2015.  Tr. 223-28.  Benefits

were denied initially, Tr. 151-54, and upon reconsideration, Tr. 158-64.  Plaintiff

appeared at a hearing before an administrative law judge (ALJ) on August 8, 2017.

Tr. 52-91.  On March 15, 2018, the ALJ issued an unfavorable decision, Tr. 12-45,

and on January 30, 2019, the Appeals Council denied review.  Tr. 1-6.  Plaintiff

appealed to the United States District Court for the Eastern District of Washington,

and on March 27, 2020, United States Magistrate Judge John T. Rodgers issued an

order remanding the matter for further proceedings.  Tr. 774-98.

On May 25, 2021, Plaintiff appeared at a second hearing, Tr. 666-718, and on

July 23, 2021, the ALJ issued another unfavorable decision.  Tr. 634-65.  The matter

is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts,

the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are

therefore only summarized here.

Plaintiff was 30 years old at the time the application was filed.  Tr. 39.  He was in special education classes in school but graduated from high school with a regular diploma.  Tr. 350, 500, 609, 693.  He was born with his umbilical cord around his neck, leading to central nervous system abnormalities causing left side weakness and developmental impairments.  Tr. 350, 500, 609.  He has work experience in jobs of short duration sorting fruit, unloading boxes and stocking shelves.  Tr. 63-65, 85-86, 695.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156

(9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).

ORDER - 4

At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers

in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 14, 2015, the application date.  Tr. 640.  At step two, the ALJ found that Plaintiff has the following severe impairments:  seizure disorder; sleep apnea; obesity; low average cognitive ability/learning disorder/unspecified neurocognitive disorder; depression; anxiety; personality disorder.  Tr. 640.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 641.

The ALJ then found that Plaintiff has the residual functional capacity to perform medium work with the following additional limitations:

> [He can] frequently climb ramps or stairs; should not climb ladders, ropes, or scaffolds; must avoid concentrated exposure to workplace hazards such as working with dangerous machinery and working at unprotected heights; can understand, remember, and persist at simple routine tasks in a routine work environment with simple work related decisions; superficial work-related interaction with coworkers and supervisors (for example, no supervising other employees, no team problem-solving, but can accept directions and feedback from supervisors and respond appropriately); only incidental interaction with the public (that is, interaction with the public is not essential part of job duties).

Tr. 643.

ORDER - 7

At step four, the ALJ found that Plaintiff has no past relevant work.  Tr. 654. At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that exist in significant numbers in the national economy that the claimant can perform such as hand packager, machine packager, or hospital cleaner. Tr. 654.

Thus, the ALJ found that Plaintiff has not been under a disability within the meaning of the Social Security Act at any time since August 14, 2015, the date the application was filed.  Tr. 656.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying supplemental security income under Title XVI of the Social Security Act.  ECF No. 10.  Plaintiff raises the following issues for review:

1.    Whether the ALJ properly considered the medical opinions;

2.    Whether the ALJ properly evaluated Plaintiff's symptom testimony; and

3.    Whether the ALJ properly considered Plaintiff's left arm impairment; ECF No. 10 at 2.

ORDER - 8

# DISCUSSION

## A.    Medical Opinions

Plaintiff contends the ALJ improperly discounted the medical opinions of examining provider Thomas Genthe, Ph.D.; R.A. Cline, Psy.D.; N.K. Marks, Ph.D.; Faulder Colby; Ph.D., Renee Eisenhauer, Ph.D.; Jenifer Schulz, Ph.D.; Kyle Heisey, M.D; Greg Saue, M.D., and Debra Baylor, M.D.  ECF No. 10 at 7-10.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted). [2]

---

[2] For claims filed on or after March 27, 2017, the regulations changed the framework for evaluation of medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18,

ORDER - 9

If a treating or examining physician's opinion is uncontradicted, an ALJ may

reject it only by offering "clear and convincing reasons that are supported by

substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported by

clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228

(internal quotation marks and brackets omitted).  "If a treating or examining doctor's

opinion is contradicted by another doctor's opinion, an ALJ may only reject it by

providing specific and legitimate reasons that are supported by substantial

evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31

(9th Cir. 1995)).

### 1.  Thomas Genthe, Ph.D.

In September 2015, Dr. Genthe completed a DSHS Psychological/Psychiatric

Evaluation form.  Tr. 511-20.  He diagnosed mild depressive disorder and mild

intellectual disability.  Tr. 513.  Dr. Genthe assessed a severe limitation in the ability

to adapt to changes in a routine work setting and marked limitations in six other

functional areas.  Tr. 513-514.  Dr. Genthe assessed an overall severity rating of

marked and opined that Plaintiff's cognitive limitations "will likely hinder his

2017); 20 C.F.R. § 416.920c.  Plaintiff's claim was filed in August 2015, so the

previous method of evaluating medical opinions applies.

acquisition of many important skills in a reasonable amount of time." Tr. 514.  Dr.
Genthe indicated that Plaintiff would likely perform best on tasks that are relatively
simple, repetitive, and do not demand cognitive flexibility.  Tr. 514.  He also
indicated that Plaintiff's ability to function will likely be best in environments that do
not offer significant distractions, and that Plaintiff may find it difficult to work
independently without a fair amount of supervision.  Tr. 514.

The ALJ gave little to no weight to Dr. Genthe's opinion for the following
reasons:  (1) the opinion is a DSHS evaluation completed to qualify for state medical
benefits; (2) the opinion is inconsistent with the longitudinal record; (3) the opinion
is inconsistent with treatment notes indicating stable mental health; (4) Dr. Genthe
reviewed no outside records; (5) the assessment is based on Plaintiff's unreliable
subjective reports; (6) the results of the PAI test undermine the assessment; (7) the
limitations assessed are unsupported by exam findings and inconsistent with test
results; (8) Plaintiff's depression was mild and controlled with medication; and (9)
the opinion is non-specific and lacks finite limitations.  Tr. 652-53.

First, the ALJ found that DSHS evaluations are completed for the purpose of
qualifying the individual for state medical benefits and not for the assessment of
functional limitations.  Tr. 652.  The purpose for which the report was obtained is
not alone "a legitimate basis for rejecting it."  *Reddick v. Chater*, 157 F.3d 715, 726
(9th Cir. 1998).  This is not a legally sufficient reason for rejecting Dr. Genthe's
opinion.

Second, the ALJ found that Dr. Genthe's opinion is inconsistent with the mental status exams in the longitudinal record. Tr. 652. An ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). In support, the ALJ cited mental status exam findings indicating that Plaintiff appeared well-groomed, alert, fully oriented, and cooperative with good eye contact; he had normal psychomotor activity, clear and coherent speech, intact memory; and he had fair judgment, abstractive ability, attention and concentration, and impulse control. Tr. 652 (numerous citations). However, Dr. Genthe's mental exam status findings similarly indicate that Plaintiff appeared well-groomed with normal speech; he presented as generally open, friendly, and cooperative; his thought process and content, orientation, and perception were normal; memory was mostly intact; and concentration was normal. Tr. 516. There is no inconsistency.

Furthermore, the ALJ's summary minimizes abnormal mental status exam findings, which was previously found to be improper by this Court. Tr. 794.[3] In

---

[3] Plaintiff argues the ALJ violated the law of the case by revisiting issues previously decided by this Court. ECF No. 10 at 10. The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case. *Stacy v. Colvin*, 825 F.3d

ORDER - 12

addition to the positive findings noted above, Dr. Genthe also found Plaintiff's mood was "a little tired" with broad affect; fund of knowledge was insufficient; he was unable to answer the abstract thought question; his insight about his clinical issues was "fair to poor;" and his judgment to make "sound, reasonable and responsible decisions about this treatment is poor." Tr. 516. Similarly, the ALJ cited the mental status exam results of Dr. Cline, Tr. 652 (citing Exhibit C1F/4-5, Tr. 342-43), which

---

563, 567 (9th Cir. 2016) (citing *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012)). The rule of mandate is similar but provides that a district court which has received a mandate from an appellate court cannot vary or examine the mandate except to execute it. *Stacy*, 825 F.3d at 567 (citing *Hall*, 697 F.3d at 1067). The district court may, however, "decide anything not foreclosed by the mandate." *Stacy*, 825 F.3d at 567 (quoting *Hall*, 697 F.3d at 1067). A district court may reexamine any issue on remand that is not inconsistent with a mandate. *Stacy,* 825 F.3d at 568. The law of the case doctrine and the rule of mandate both apply in the social security context. *Id.* at 567. Defendant argues the law of the case does not apply because the evidence on remand was substantially different. ECF No. 11 at 2. Regardless, the Court reviewed the ALJ's current reasons for legal sufficiency and whether they are supported by substantial evidence based on the current record. In several instances noted throughout this decision, the Court rejects the ALJ's reasoning on the same basis it was previously rejected.

included some normal mental status exam findings, but also noted that Plaintiff's mood and affect were tired, a possible problem with working memory or attention, inability to complete serial subtractions without errors, and limited ability to think abstractly. Tr. 342-43. The ALJ also cited the mental status exam results from Dr. Marks, Tr. 652 (citing Exhibit C17/5-6, Tr. 1128-29), who found that Plaintiff's speech was organized and progressive, attitude was cooperative and open with good eye contact, but his mood was depressed with a lethargic affect. Tr. 1128. Dr. Marks noted confused thinking, memory deficits including poor working memory, fair long-term memory, poor memory for complex directives, and deficits in fund of knowledge. Tr. 1129. Other mental status exam findings over the longitudinal record also contain abnormal findings such as tired mood and affect, fair abstractive ability, fair attention, fair concentration, fair impulse control, and fair insight and judgment. *See* e.g., Tr. 348, 358, 402, 434-35, 461-62, 481, 487-88. The ALJ dismissed these negative findings as not supportive of the limitations assessed without any basis in the record or any analysis.

Additionally, Dr. Genthe's assessment of limitations involved evaluation of more than just a mental status exam: he conducted a clinical interview and extensive objective testing. While the mental status exam findings informed his opinion, it is not the only basis for the limitations assessed. A psychological opinion involves significantly more than a straightforward application of mental status exam findings to arrive at a functional assessment. Even if the ALJ's determination that Dr.

Genthe's mental status exam findings do not support his conclusions is supported by substantial evidence, and the Court does not so find, this is not a basis to reject the entire opinion in light of Dr. Genthe's other findings. This is not a specific, legitimate reason for rejecting Dr. Genthe's opinion.

Third, the ALJ found that Dr. Genthe's opinion is inconsistent with treatment notes that "regularly indicate stable mental health conditions with medications." Tr. 652. However, as this Court previously found, "the Summary and Conclusions portion of Dr. Genthe's report makes clear that he felt Plaintiff's cognitive functioning posed the primary barrier to work and would 'likely hinder his acquisition of many important skills in a reasonable amount of time.'" Tr. 794 (quoting Tr. 419). In other words, Dr. Genthe did not opine that Plaintiff's biggest barrier to work is unstable mental health; rather, he opined that Plaintiff's cognitive functioning is the primary limiting factor. This is not a specific, legitimate reason supported by substantial evidence to reject Dr. Genthe's opinion.

Fourth, the ALJ found that the fact that Dr. Genthe did not review outside treatment records means he was "unaware of the longitudinal picture of the claimant's psychological impairments." Tr. 652. As this Court previously found, the fact that Dr. Genthe did not review any records does not detract from his conclusions, particularly in light of the extensive objective testing performed. Tr. 793. The ALJ failed to identify any specific treatment records inconsistent with Dr.

1   Genthe's conclusions that, had they been reviewed, may have changed the results.

2   This is not a specific and legitimate reason to reject the opinion.

3         Fifth, the ALJ found that Dr. Genthe's observations and findings were based

4   on Plaintiff's "subjective reports and presentation" which the ALJ found to be not

5   entirely reliable.   Tr. 652.   A medical opinion may be rejected if it is based on a

6   claimant's subjective complaints which were properly discounted.   *Tonapetyan v.*

7   *Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec.*

8   *Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 604 (9th

9   Cir. 1989).   However, the ALJ must provide the basis for the conclusion that an

10  opinion was more heavily based on a claimant's self-reports than the medical

11  evidence.   *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).   Here, the only

12  basis given by the ALJ was that Dr. Genthe did not review other medical evidence.

13  As noted above, this is an insufficient basis to reject the opinion.

14        Sixth, the ALJ found that the results of the PAI undermined the overall

15  persuasiveness of the evaluation results.   Tr. 653.   However, as this Court previously

16  found, Dr. Genthe stated the testing provided a valid assessment of Plaintiff's

17  current mental status.   Tr. 420.   Veracity issues were limited to Plaintiff's self-

18  reporting of problems on the Personality Assessment Inventory (PAI).   Tr. 423-25.

19  Dr. Genthe explained in detail that validity indices can be influenced by a number of

20  factors other than an effort to deceive.   Tr. 425.   The PAI was one assessment among

21

numerous other objective tests and does not represent an overall lack of credibility. This is not a specific, legitimate basis for rejecting Dr. Genthe's opinion.

Seventh, the ALJ found Dr. Genthe's opinion is unsupported by the examination and inconsistent with the findings of the tests he administered.  Tr. 653. An ALJ may discount a medical source's opinion that is inconsistent with the source's other findings.  *Bayliss,* 427 F.3d at 1216.  However, this Court previously found Dr. Genthe's objective findings provide an evidentiary basis for the opinion. Tr. 794.  Furthermore, the ALJ did not explain the perceived inconsistency.  This is not a specific, legitimate reason supported by substantial evidence for rejecting the opinion.

Eighth, the ALJ noted that Dr. Genthe found Plaintiff's depression was only mild and well-managed with medication.  Tr. 653.  This is essentially a restatement of prior reasoning that Plaintiff's mental health symptoms are not sufficiently severe to justify the limitations assessed by Dr. Genthe.  Dr. Genthe stated that Plaintiff's cognitive functioning posed the primary barrier to work, not his depression.  Tr. 514. This is not a specific, legitimate reason for rejecting the opinion.

Lastly, the ALJ found that Dr. Genthe's statement that Plaintiff's cognitive functioning posed the primary barrier to work and would "likely hinder his acquisition of many important skills in a reasonable amount of time" is non-specific, non-functional, and do not define frequency.  Tr. 653.  However, Dr. Genthe's opinion contains an assessment of specific, defined functional limitations, including

severe and marked limitations in seven functional areas.  Tr. 513-14.  Dr. Genthe's

explanation that his assessment is based on cognitive issues, as opposed to mental

health issues, is not a functional assessment but explains the basis for the limitations

assessed. This is not a specific, legitimate reason for rejecting the limitations

assessed by Dr. Genthe.

The ALJ repeated multiple reasons previously found by this Court to be an

insufficient basis for rejecting Dr. Genthe's opinion.  The ALJ's new reasons are

also insufficiently supported or improperly applied to Dr. Genthe's opinion.  The

ALJ failed to provide specific and legitimate reasons to reject the opinion.  The

matter must be remanded for reconsideration of Dr. Genthe's opinion.

### 2.  *N.K. Marks, Ph.D.*

In March 2019, Dr. Marks completed a DSHS Psychological/Psychiatric

Evaluation form.  Tr.  1124-29.  Dr. Marks diagnosed major depressive disorder,

anxiety disorder, bipolar disorder by history, and unspecified neurocognitive

disorder with probable learning disabilities.  Tr. 1126.  Dr. Marks assessed a severe

limitation in the ability to set realistic goals and plan independently and marked

limitations in six functional areas.  Tr. 1126-27.  Dr. Marks assessed an overall

severity rating of marked.  Tr. 1127.

The ALJ gave little to no weight to Dr. Marks' assessment.  Tr. 652.  The ALJ

gave the following reasons for rejecting Dr. Marks' opinion: (1) the opinion is a

DSHS evaluation completed to qualify for state medical benefits; (2) the opinion is

inconsistent with the longitudinal record of mental status exams; (3) the opinion is inconsistent with records showing stable mental health; (4) Dr. Marks reviewed no outside records; and (5) the limitations supported by the MSE are accounted for in the RFC.  Tr. 652-53.

The first four reasons are the same reasons provided for rejecting Dr. Genthe's opinion and, for the same reasons discussed above, they are not specific, legitimate reasons supported by substantial evidence for rejecting Dr. Marks' opinion. Consistent with Dr. Genthe's opinion that cognitive functioning rather than mental health issues posed the primary barrier to work, Dr. Marks diagnosed an unspecified neurocognitive disorder with probable learning disabilities and noted Plaintiff "needs help with ADL's [activities of daily living], further assessment is recommended for learning disabilities." Tr. 1127.  The ALJ's fifth reason for rejecting Dr. Marks' opinion is that the limitations supported by his mental status exam results are accounted for in the RFC.  Tr. 653.  This is essentially a restatement of the ALJ's other improper reasons for rejecting the opinion.  As a result, Dr. Marks' opinion must be reconsidered on remand.

3. *R.A. Cline, Psy.D.*

In September 2014, Dr. Cline completed a DSHS Psychological/Psychiatric Evaluation form.  Tr. 494-96.  Dr. Cline diagnosed depressive disorder, personality disorder NOS with traits of antisocial personality disorder, and "rule out" borderline intellectual functioning.  Tr. 496.  Dr. Cline assessed marked limitations in the

ability to understand, remember, and persist in tasks with detailed instructions; to communicate and perform effectively in a work setting; and to maintain appropriate behavior in a work setting.  Tr. 496-97.  Dr. Cline also stated that Plaintiff "appears to have some intellectual deficits," and recommended that an IQ test be performed along with a Wechsler Memory Scale (WMS) test or a Wide Range Achievement Test (WRAT).  Tr. 497.

Dr. Cline completed a second DSHS Psychological/Psychiatric evaluation form in July 2017 and diagnosed unspecified mood disorder and unspecified personality disorder, noting a "rule out" diagnosis of unspecified intellectual disability.  Tr. 524-28.  Dr. Cline assessed moderate limitations in eight functional areas and assessed an overall severity rating of "moderate."  Tr. 526-27.

The ALJ gave little to no weight to both of Dr. Cline's opinions.  Tr. 652.  The first four reasons given for rejecting the opinions are the same reasons provided for rejecting Dr. Genthe's and Dr. Marks' opinions and, for the reasons discussed above, they are not specific, legitimate reasons supported by substantial evidence for rejecting Dr. Cline's opinions.

With respect to the September 2014 opinion, the ALJ found it does not meet the durational requirement because Dr. Cline opined Plaintiff's limitations were expected to last three to nine months.  Tr. 527, 652.  The duration requirement provides that to be considered disabling, an impairment "must have lasted or must be expected to last for a continuous period of at least 12 months."  20 C.F.R. § 416.909.

While this may be a sufficient reason for rejecting the limitations assessed by Dr. Cline, it does not apply to his recommendation that IQ and other cognitive testing be obtained.

The ALJ also found regarding both opinions that the limitations contained in the RFC account for the limitations supported by the results of the mental status exams conducted by Dr. Cline. Tr. 652. As with the ALJ's analysis of the mental status exam findings of Dr. Genthe and Dr. Marks, this is essentially a restatement of reasons previously found to be legally insufficient. Thus, Dr. Cline's opinion must be reconsidered.

*4. Faulder Colby, Ph.D. and R. Renee Eiesnhauer, Ph.D.*

Dr. Colby completed a DSHS Review of Medical Evidence form in October 2015. Tr. 521-22. He reviewed the opinions of Dr. Heisey, Dr. Genthe, and Dr. Cline and found that the September 2014 diagnoses of Dr. Cline and the September 2015 diagnoses by Dr. Genthe were supported by the medical evidence. Tr. 521. Dr. Colby indicated that while Dr. Cline's diagnoses of depression and personality disorder are supported by the evaluation and report, he opined that "it is unlikely that SSA would consider either of them the diagnosis of a serious mental illness under SSA rules." Tr. 521. He opined that the severity and functional limitations assessed are supported by the medical evidence and that onset of disability was the date of Dr. Genthe's evaluation. Tr. 521-22.

1      Dr. Eisenhauer completed DSHS Review of Medical Evidence forms in

2  March 2019.  Tr. 1131-34.  Dr. Eisenhauer reviewed the opinion of Dr. Marks and

3  found that the diagnoses and functional limitations assessed were supported by the

4  objective medical evidence, specifically noting that "[t]he ratings are consistent with

5  the severity noted in the evidence."  Tr. 1133.  Dr. Eisenhauer assessed a severe

6  limitation in the ability to set realistic goals and plan independently and six marked

7  limitations.  Tr. 1131.

8      The ALJ gave no weight to the findings in the DSHS forms completed by Drs.

9  Colby and Eisenhauer.  Tr. 653.  The ALJ found (1) the forms are not opinions, but

10  DSHS review regarding eligibility for state benefits, and are not assessments of

11  functional limitations; and (2) Dr. Colby only reviewed the opinions of Drs. Cline,

12  Genthe, and Heisey, and Dr. Eisenhauer only reviewed Dr. Marks' March 2019

13  opinion.  Tr. 653.

14      First, the ALJ found the forms completed by Dr. Colby and Dr. Eisenhauer

15  and not medical opinions because they were generated to review eligibility for

16  state benefits, and that they are not assessments of functional limitations.  Tr. 653.

17  Medical opinions are statements from acceptable medical sources that reflect

18  judgments about the nature and severity of the claimant's impairments, including

19  the claimant's symptoms, diagnosis and prognosis, what the claimant can do

20  despite any impairment, and the claimant's physical or mental restrictions.  20

21  C.F.R. § 416.927(a)(1).  Neither the ALJ nor the Defendant explain why the

statements of Drs. Colby and Eisenhauer are not medical opinions.   Tr. 653; ECF

No. 11 at 15.   The forms completed by both Dr. Colby and Dr. Eisenhauer ask

them to review medical evidence and indicate whether the diagnoses and

functional limitations in a prior evaluation are supported by the objective medical

evidence.  Tr. 521-22, 1133-34.  The forms ask for rationale for the opinion; the

impact of substance use, if any; and whether duration and onset in the prior

evaluation are supported by the medical evidence.  Tr. 521-22, 1133-34.  Dr.

Eisenhauer also evaluated Plaintiff's mental limitations; assigned a level of

impairment for work related abilities based on a review of previous mental health

evaluation; determined the severity of each mental impairment based upon clinical

findings; and listed the diagnosis for each mental health condition that impairs

work function.  Tr. 1131-32.  Completion of these forms involves a professional

judgment about the nature and severity of the claimant's impairments and

constitutes a medical opinion that cannot be disregarded based on form alone.

Second, the ALJ rejected the opinions because neither Dr. Colby nor Dr.

Eisenhauer treated or examined Plaintiff, and because their opinions are based on

reviewing other evaluations.  The regulations direct that all opinions, including the

opinions of nonexamining providers, should be considered.  20 C.F.R. § 416.927(b),

(c).  Furthermore, the ALJ gave great weight to other nonexamining providers

without regard to the lack of treating relationship.  Tr. 650.  This is not a specific,

1  legitimate reason for rejecting the opinions.  The opinions of Drs. Colby and

2  Eisenhauer must be reconsidered on remand.

3      *5.  Jenifer Schultz, Ph.D.*

4      Dr. Schultz conducted a clinical interview and prepared a Mental Evaluation

5  report in March 2020.  Tr. 1473-77.  She diagnosed bipolar disorder and indicated

6  rule out unspecified learning disorder.  Tr. 1476.  Dr. Schultz found that Plaintiff's

7  ability to reason and understand are fair and his memory is intact.  Tr. 1476.  She

8  found he could focus efficiently during the assessment and his concentration is fair

9  even though he could not complete serial 7s.  Tr. 1476.  She opined that "his

10  occupational and daily living skill adaptation is poor but his social adaptation is

11  fair."  Tr. 1476.

12      The ALJ gave little to no weight to Dr. Schultz's opinion.  Tr. 651.  The ALJ

13  agreed the record indicates Plaintiff retains memory and concentration skills to

14  understand, remember, and persist at simple routine tasks in a routine work

15  environment with limited social interaction with others.  Tr. 651.  However, the ALJ

16  did not give more weight to Dr. Schultz's opinion because she used non-specific and

17  qualified terms without finite definitions, such as "fair," "intact," and "poor."  An

18  ALJ may reject a medical opinion that fails to specify any functional limitations or

19  describes limitations equivocally.  *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir.

20  2020) (finding a physician's descriptions of the plaintiff's limitations "as 'limited' or

21  'fair' were not useful because they failed to specify functional limits"); *Valentine v.*

*Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009). Dr. Schultz's opinion was vague as to Plaintiff's functional limitations. Tr. 353. Her use of the terms "fair," "intact," and "poor" in her functional assessment was a specific and legitimate reason to discount her opinion.

Plaintiff argues Dr. Schultz's opinion "appeared to go to off-task and productivity limitations, which were vocationally defined." ECF No. 10 at 14. Plaintiff argues "these terms" have "vocational meaning." ECF No. 12 at 7. However, Plaintiff cites no authority for this argument and the Court finds none. The vocational expert testified that "adaptation poor" and "concentration fair" are not vocational questions. Tr. 708. Plaintiff argues that if Dr. Schultz's opinion is ambiguous, the ALJ should have requested clarification through interrogatories to Dr. Schultz as he requested at the hearing. EF No. 10 at 14 (citing Tr. 708-09). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir.1998). Here, the ALJ reasonably concluded the functional assessment is non-specific and there is no error with respect to Dr. Schultz's opinion.

### 6. *Kyle Heisey, M.D.*

In September 2015, Dr. Heisey completed a DSHS Physical Evaluation form. Tr. 500-08. He diagnosed seizure disorder, obstructive sleep apnea, intellectual

disability/learning disability, encephalomalacia with left hemiparesis, and depression/anxiety.  Tr. 500.  He assessed the severity of Plaintiff's seizure disorder as marked and his learning disability and encephalomalacia/left hemiparesis as moderate, affecting his ability to lift, carry, handle, push, pull, reach, stoop, crouch, and communicate.  Tr. 501.  Dr. Heisey opined Plaintiff was limited to sedentary work and should not drive, use machinery, or work at heights.  Tr. 502.

In May 2016, Dr. Heisey completed a Medical Source Statement form.  Tr. 491-92.  He listed diagnoses of seizure disorder, learning disability, left hemiparesis due to brain damage in utero, obstructive sleep apnea, and depressive/bipolar disorder.  Tr. 491.  Dr. Heisey opined Plaintiff's prognosis is poor because his seizure disorder, learning disability, and hemiparesis are permanent.  Tr. 492.  He also opined that Plaintiff would probably miss four or more days of work per month because, "[h]e would not likely tolerate stress of a regular work week."  Tr. 492.

In August 2017, Dr. Heisey also opined in treatment notes that regarding Plaintiff's developmental learning difficulties, "I think [Plaintiff] should qualify for disability."  Tr. 614.

The ALJ gave little to no weight to Dr. Heisey's opinions.  Tr. 651.  First, the ALJ credited Dr. Heisey's assessment that Plaintiff should not drive, use machinery, or work at heights.  Tr. 651.  However, the ALJ found that medical evidence indicated Plaintiff had not had a seizure for the two previous year and discredited Dr. Heisey's 2015 opinion that Plaintiff's seizure disorder is of marked severity.  Tr.

651 (citing Tr. 396, 461, 607, 611, 614, 1137, 1139, 1368, 1431, 1436, 1488).

Plaintiff does not challenge the ALJ's findings regarding Dr. Heisey's assessment of

his seizure disorder.  ECF No. 10 at 15-16.

However, Plaintiff argues the ALJ erred by failing to address limitations

assessed by Dr. Heisey resulting his left sided hemiparesis.  ECF No. 10 at 15; *see*

*infra*.  Dr. Heisey's 2015 opinion indicated that Plaintiff's left side hemiparesis

moderately impacted his functioning in several areas.  Tr. 501.  The ALJ did not

address Dr. Heisey's assessment of lifting, carrying, handling, and other limitations

associated with hemiparesis at step two or in evaluating the RFC, and did not

address them in rejecting his opinions.  *See infra*.  Dr. Heisey's 2015 opinion must

be reconsidered on remand.

Second, the ALJ found Dr. Heisey's May 2016 opinion that Plaintiff would

miss four or more days of work per month is inconsistent with other evidence in the

record showing Plaintiff could maintain attendance.  Tr. 651.  An ALJ may discount

a medical source opinion to the extent it conflicts with the claimant's daily activities.

*Morgan*, 169 F.3d at 601-02.  The ALJ cited Plaintiff's activities of attending

medical appointment, mental health classes, babysitting, caring for his family, and

contacting family.  Tr. 651.  Attending medical appointments and mental health

classes and contacting family does not involve the stress of an eight-hour workweek

which is the basis for the limitation assessed by Dr. Heisey.  This portion of the

ALJ's reasoning is insufficiently supported.

1       With regard to babysitting, the record indicates that during the period from

2   April 2019 to July 2019 Plaintiff reported babysitting his niece and others while

3   adults were at work and his brother was in the hospital.  Tr. 649, 1278, 1296, 1307,

4   1402 (duplicate); *see also* Tr. 1274, 1302.  The ability to care for young children

5   without help may undermine a disability claim.  *Rollins,* 261 F.3d at 857.  However,

6   "the mere fact that [a claimant] cares for small children does not constitute an

7   adequately specific conflict with [the claimant's] reported limitations." *Trevizo v.*

8   *Berryhill*, 871 F.3d 664, 681 (9th Cir. 2017).  Plaintiff argues that his babysitting

9   activities were limited, as his nieces and nephews were mostly older and school-age.

10  ECF No. 10 at 20.  Plaintiff testified that he watched his nieces and nephews during

11  spring break or for a few hours before school if his brother had to work early in the

12  morning.  Tr. 677-78.  He also testified that he tried to change the diaper of his

13  youngest nephew, but he was not good at it.  Tr. 678.  Without more, Plaintiff's

14  somewhat limited babysitting activities do not by themselves undermine Dr. Heisey's

15  assessment that the stress of a regular workweek would impact his attendance.

16      Third, the ALJ found Dr. Heisey's May 2016 opinion that Plaintiff "would not

17  likely tolerate stress of a regular workweek" is vague and does not convey function-

18  by-function work limitations.  Tr. 651.  An ALJ may reject an opinion that does "not

19  show how [the claimant's] symptoms translate into specific functional deficits which

20  preclude work activity." *Morgan,* 169 F.3d at 601.  However, Dr. Heisey assessed a

21  specific functional deficit resulting from the inability to tolerate the stress of a

workweek: Plaintiff would miss four or more days of work per month.  This is not a specific, legitimate reason for rejecting this limitation.  Dr. Heisey's May 2016 opinion must be reconsidered on remand.

Fourth, the ALJ rejected Dr. Heisey's 2017 opinion that Plaintiff should qualify for disability based on his learning disability because he "never" examined Plaintiff for this impairment and his treatment notes "never" reflected abnormal findings related to this impairment.  Tr. 651.  A medical opinion may be rejected if it is unsupported by medical findings.  *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan*, 242 F.3d at 1149; *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992).  However, as Plaintiff observes, in 2013 Dr. Heisey noted developmental learning difficulties and idiopathic generalized epilepsy in Plaintiff's chart, and in 2015 he noted Plaintiff had congenital central nervous system abnormalities on a CT scan with associated left side hemiparesis.  Tr. 604.  In May 2016 Dr. Heisey's treatment notes indicate developmental learning difficulties as a chronic issue "related to his central nervous system lesion."  Tr. 609.  In March 2017, Dr. Heisey noted Plaintiff's "lifelong learning disabilities" which "prevented him from functioning normally" and impacted his ability to keep his apartment clean.  Tr. 612.  The ALJ's statements that Dr. Heisey "never" noted abnormalities related to Plaintiff's learning disability is not correct.

The ALJ also rejected this statement because it is inconsistent with Dr. Heisey's 2015 opinion that Plaintiff's learning disorder is moderate. Tr. 651. Where a treating physician's opinion is itself inconsistent, it should be accorded less deference. *Johnson v. Chater*, 87 F.3d 1015, 1018 (9th Cir. 1996). This may be a specific, legitimate reason for rejecting the opinion. However, in light of the ALJ's misstatement noted above and other issues in evaluating Dr. Heisey's opinions, the 2017 opinion should be reconsidered on remand.

### 7. Greg Saue, M.D., and Debra Baylor, M.D.

In Marcy 2016, Dr. Saue reviewed the record and assessed limitations consistent with light work and various postural limitations. Tr. 138-40. He also assessed manipulative limitations of limited reaching in front and/or laterally with both arms and limited handling, fingering, and feeling of the left hand. Tr. 139. He opined Plaintiff's left upper extremity is limited to assisting with lifting and handling but could only occasionally grip. Tr. 139.

In September 2019, Dr. Baylor reviewed the record and assessed essentially the same limitations as Dr. Saue: light work with postural and manipulative limitations. Tr. 831-35. Dr. Baylor assessed the same manipulative limitations of bilateral limited reaching in front and/or laterally and limited handling, fingering, and feeling of the left hand. Tr. 834. She similarly explained that the left upper extremity is limited to assisting with lifting and handling but can only occasionally

1  grip.  Tr. 834.  She noted this was due to reported left arm and leg numbness and

2  Plaintiff's other impairments.  Tr. 835.

3       The ALJ gave little to no weight to the opinions of Dr. Saue and Dr. Baylor.

4  Tr. 650.  The ALJ gave two reasons for rejecting both opinions: (1) they did not

5  consider additional medical evidence subsequently generated or provided; and (2)

6  they are inconsistent with that evidence.  Tr. 650.  The ALJ did not further explain

7  this reasoning or cite any specific inconsistencies.

8       Plaintiff argues the ALJ's finding is insufficiently explained.  ECF No. 10 at

9  16-17.  Merely to state that a medical opinion is not supported by enough objective

10 findings does not achieve the level of specificity our prior cases have required.

11 *Rodriguez v. Bowen*, 876 F.2d 759,762 (9th Cir. 1989) (citing *Embrey v. Bowen*, 849

12 F.2d 418, 421 (9th Cir. 1988)).  "The ALJ must do more than offer his conclusions.

13 He must set forth his own interpretations and explain why they, rather than the

14 doctors', are correct."  *Embrey*, 849 F.2d at 421-22.  Indeed, it is noted that the

15 opinion of Norman Staley, M.D., another reviewing physician, was given significant

16 weight by the ALJ.  Tr. 650.  In March 2020, six months after Dr. Baylor issued her

17 opinion that Plaintiff is limited to light work with manipulative and postural

18 limitations, Dr. Staley opined that Plaintiff is limited to medium work, has no

19 manipulative limitations, and the only postural limitation is no climbing to heights.

20 Tr. 852-59.  Neither the ALJ nor Dr. Staley indicated what evidence was added to

21 the record from September 2019 to March 2020 which makes Dr. Staley's opinion

more persuasive than the two prior consistent decisions of Drs. Saue and Baylor.  Tr. 650, 852-59.  On remand, the ALJ should reconsider the opinions of Drs. Saue and Baylor and provide legally sufficient reasons for the weight assigned to each opinion.

**C.    Symptom Testimony**

Plaintiff contends the ALJ failed to properly assess his symptom claims.  ECF No. 10 at 17-21.  An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim*, 763 F.3d at 1163 (internal citations and quotations omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Id*.  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834); *see also Thomas*, 278 F.3d at

958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition.  *Thomas*, 278 F.3d at 958-59.

The ALJ found that Plaintiff "has some restrictions, but his statement concerning his incapacity are not borne out by the evidence of record, the well-considered medical opinions, or the consistency of his own reported and demonstrated functional ability."  Tr. 644.  The ALJ gave the following reasons for rejecting Plaintiff's symptom claims: (1) the physical and objective exam findings regarding Plaintiff's epilepsy and sleep apnea do not to establish the limitations alleged; (2) the record regarding Plaintiff's mental health does not indicate that work is precluded; (3) Plaintiff made inconsistent statements regarding his claim;

(4) Plaintiff's activities were inconsistent with his allegations; and (5) Plaintiff's work history was sporadic.  Tr. 644-50.

First, the ALJ found the physical and objective exam findings regarding Plaintiff's epilepsy and sleep apnea do not support the limitations alleged.  Tr. 644-45.  This is not a clear and convincing reason for rejecting Plaintiff's symptom claims.  Plaintiff did not allege his epilepsy and sleep apnea were disabling on their own.  ECF No. 10 at 18.  Plaintiff instead argues that he has consistently alleged that he is most limited by being too slow, not performing activities correctly or to the satisfaction of supervisors, and having limitations in reading and writing.  ECF No. 10 at 18 (citing Tr. 64-65, 688-89).

As to the remaining reasons given by the ALJ for rejecting Plaintiff's symptom claims, the evaluation of a claimant's symptom statements and alleged limitations relies, in part, on the assessment of the medical evidence.  *See* 20 C.F.R. § 416.929(c); Social Security Ruling 16-3p, 2017 WL 5180304 (effective October 25, 2017).  Therefore, in light of the case being remanded for the ALJ to readdress the medical opinions addressed above, a new assessment of Plaintiff's subjective symptom statements will be necessary.

## C.    Left Arm Impairment

Plaintiff argues the ALJ erred by failing to properly assess his left arm limitations.  ECF No. 10 at 3.  In September 2013, the same ALJ issued a decision

finding Plaintiff not disabled regarding a prior application.[4]  Tr. 92-109.  Plaintiff

asserts the ALJ should have adopted findings from the 2013 nondisability decision

regarding his left arm impairment.  ECF No. 10 at 3-4.

In the 2013 decision, the ALJ's step two finding included the severe

impairment of status post cerebral artery infract/left sided hemiparesis.  Tr. 97.  The

finding was based on evidence that Plaintiff "experienced a cerebral artery infract

and mild left-sided hemiparesis resulting in limited use of his left arm and leg, when

compared to his right side.  He often had to use his other hand for help.  There was

easier fatigability of the left side of his body."  Tr. 97.  The 2013 RFC finding

included the following limitation: "The claimant has unlimited reaching and

handling with the right, upper extremity and with the left, upper extremity he can

assist in lifting and handling but can only occasionally grip."  Tr. 99.

"The principles of res judicata apply to administrative decisions, although the

doctrine is applied less rigidly to administrative proceedings than to judicial

proceedings."  *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1998) (citing *Lyle v.*

*Sec'y of Health and Human Servs.*, 700 F.2d 566, 568 n.2 (9th Cir. 1983)).  Social

Security Acquiescence Ruling 97-4(9) followed *Chavez* and explains that it "applies

only to cases involving a subsequent disability claim with an unadjudicated period

---

[4] The merits of the 2013 decision are not at issue.  The ALJ found no basis to

reopen the prior application.  Tr. 638.

ORDER - 35

arising under the same title of the [Social Security] Act as a prior claim on which there has been a final decision by an ALJ or the Appeals Council that the claimant is not disabled."  Acquiescence Ruling (AR) 97-4(9), 1997 WL 742758.  A previous final determination of nondisability creates a presumption of continuing nondisability with respect to any subsequent unadjudicated period of alleged disability.  *Lester*, 81 F.3d at 827; AR 97-4(9).   "The claimant, in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability."  *Chavez*, 844 F.2d at 693 (citation omitted).

AR 97-4(9) directs adjudicators to follow a two-step inquiry in considering a prior nondisability decision.  First, adjudicators must apply the presumption of continuing nondisability.  *Id*.  A claimant "may rebut this presumption by showing a 'changed circumstance' affecting the issue of disability with respect to the unadjudicated period;" for example, an increase in the severity of the claimant's impairments or the alleged existence of an impairment not previously considered.  *Id.*

Second, if the claimant rebuts the presumption, the adjudicator must still give effect to certain findings in the final Appeals Council or ALJ decision on the prior claim while adjudicating the subsequent claim, including findings regarding a claimant's severe impairments, whether the claimant's impairments meet or equal a Listing, RFC, education, or work experience.  *Id.*  Such findings must be adopted

in determining whether the claimant is disabled for the unadjudicated period

"unless there is new and material evidence relating to such a finding or there has

been a change in the law, regulations or rulings affecting the finding or the method

for arriving at the finding." *Id.*

In the current matter, the ALJ concluded that "there has been a change in the

claimant's medical or vocational status since the prior decision as well as a change

in the criteria for determining disability; thus, [the] presumption of continuing

nondisability was rebutted." Tr. 638. The ALJ did not specify which changes in

medical or vocational status or criteria for determining disability apply.

At step two, the ALJ acknowledged Plaintiff's history of left-sided

hemiparesis but found it to be nonsevere. Tr. 641. The ALJ found that although

Plaintiff alleged very little mobility in his left arm, Tr. 417, 525, there are no

physical examinations or neurological findings in the record. Tr. 641. The ALJ

observed that treatment notes document congenital nervous system abnormalities

found on a computerized tomography scan with associated left sided hemiparesis.

Tr. 641 (citing Tr. 500, 604). The ALJ noted that Plaintiff's "own doctor said that

his hemiparesis is only slight." Tr. 641 (citing Tr. 491). On this basis, the ALJ

concluded Plaintiff's left sided hemiparesis is nonsevere and did not include any

limitation regarding Plaintiff's left arm in the RFC.

The ALJ found there are "no physical examinations or neurological findings

in the record." Tr. 641. This seems to suggest that there is no new and material

evidence relating to Plaintiff's left-sided limitations.  Furthermore, the ALJ's statement that Plaintiff's long-time treating physician, Dr. Heisey, characterized his hemiparesis as "slight" is not correct.  Dr. Heisey actually indicated that Plaintiff experience "slight left side weakness" but assessed moderate limitations in lifting, carrying, handling, pushing, pulling, reaching, stooping and crouching due to encephalomacia and hemiparesis.  Tr. 491.  Although the ALJ rejected Dr. Heisey's opinion, Tr. 651, as discussed *supra*, the ALJ's evaluation of the medical opinion evidence is flawed.

Defendant argues the failure to include hemiparesis as a severe impairment is harmless because the ALJ continued the sequential evaluation analysis and took into account nonsevere impairments in evaluating the RFC.  ECF No. 11 at 3.  While Defendant argues the ALJ took into account left-sided hemiparesis in evaluating the RFC, the ALJ only noted Plaintiff's testimony that he could not carry anything heavy with his left arm, Tr. 643, but did not specifically address Plaintiff's history of hemiparesis in evaluating the medical evidence or Dr. Heisey's 2015 opinion assessing limitations due to hemiparesis.  Tr. 644-46, 651.

Because this matter is remanded for reconsider of Dr. Heisey's opinion and other medical and psychological opinions, the ALJ should also reevaluate Plaintiff's left side hemiparesis in light of the prior ALJ decision and the medical record.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error.  On remand, the matter shall be assigned to a new ALJ who will reevaluate the medical evidence and Plaintiff's subjective complaints and, as necessary, reconsider findings of the sequential evaluation.  It may be helpful to obtain testimony from a medical expert regarding the extent of limitations related to Plaintiff's impairments, including left side hemiparesis and unspecified learning disorder.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, ECF No. 10, is GRANTED.

2. Defendant's Motion for Summary Judgment, ECF No. 11, is DENIED.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** December 15, 2023.

LONNY R. SUKO
Senior United States District Judge

ORDER - 39